**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| AYESHA L.[1], <br><br>          Plaintiff, <br><br>   v. <br><br> LELAND DUDEK, ACTING <br> COMMISSIONER OF <br> SOCIAL SECURITY,[2] <br><br>         Defendant. | Civil Action No. 24-04410 (JXN) <br><br><br> **OPINION** |

**NEALS**, District Judge

       Before the Court is the appeal by Plaintiff Ayesha M. Lee ("Plaintiff") of the final decision of the Commissioner of Social Security ("Commissioner") determining that Plaintiff was not disabled under the Social Security Act (the "Act"). (ECF No. 1.) This Court exercises jurisdiction pursuant to 42 U.S.C. § 405(g) and 1383(c)(3). The Court considered the administrative record, the submissions made in support of and in opposition to the instant appeal. For the reasons set forth below, the Court **AFFIRMS** the Commissioner's decision.

**I.**     **BACKGROUND AND PROCEDURAL HISTORY[2]**

       On January 8, 2018, Plaintiff applied for disability insurance benefits ("DIB"), alleging disability as of November 17, 2017, due to osteoarthritis, sciatica, hidradenitis suppurativa, right rotator cuff damage, bilateral carpal tunnel syndrome, neck and back spasms, asthma, bipolar

---

[1] Leland Dudek became the Acting Commissioner of Social Security on or about February 19, 2025. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, should be substituted for predecessor Martin O'Malley as the defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

[2] The Court adopts the Statement of the Case and Statement of Facts as set out in the Commissioner's Brief, ECF No. 15 at 7 – 9, which in turn cites to the Transcript provided by the Commissioner, ECF No. 6-2.

disorder, depression, and post-traumatic stress disorder ("PTSD") (Tr. 229-35). The state agency denied Plaintiff's claim at the initial and reconsideration levels of review (Tr. 113-18; 123-25). On September 27, 2019, the administrative law judge ("ALJ") held a hearing at which Plaintiff and a vocational expert ("VE") testified (Tr. 64-84). On June 30, 2020, the ALJ held a supplemental hearing at which a medical expert testified (Tr. 41-62). On June 24, 2020, the ALJ issued a decision finding Plaintiff not disabled (Tr. 13-39). On February 16, 2021, the Appeals Council denied Plaintiff's request for review of the ALJ's decision (Tr. 1-6). Plaintiff brought a civil action for review of the Commissioner's final decision.

On December 17, 2021, this Court reversed and remanded the matter for further administrative proceedings (Tr. 1726). On June 16, 2022, the Appeals Council vacated the final decision and remanded the case to an ALJ to further consider the medical source opinions and obtain supplemental evidence from a vocational expert to clarify the effect of the assessed limitations on the claimant's occupational base (Tr. 1734-735). On December 2, 2022, the ALJ held another hearing at which Plaintiff testified (Tr. 1665-691). On August 10, 2023, the vocational expert responded to the ALJ's interrogatories (Tr. 1844-845). On December 5, 2023, the ALJ issued a partially favorable decision, finding Plaintiff disabled as of June 1, 2023 (Tr. 1639-664). Plaintiff brings this civil action for review of the Commissioner's partially favorable decision.

**Administrative Hearing Testimony**

At the time of the first administrative hearing in 2019, Plaintiff was only 37 years old (Tr. 69). She had past relevant work as an emergency medical technician (EMT) in Newark and Irvington (Tr. 73). Plaintiff's mother drove her to the hearing and helped her with dressing, washing, and taking care of her hair (Tr. 74-75). Plaintiff lived with her mother because she needed help with herself and her 9-year-old daughter (Tr. 75). Plaintiff also had a 19-year-old daughter,

who helped her by running errands, taking her to doctor's appointments, and organizing her medicine for the week (Tr. 77).

On a typical day, Plaintiff laid in bed for 20 hours (Tr. 80). She had difficulty with sitting due to sciatica, which caused numbness and tingling (Tr. 80). Plaintiff had difficulty walking and standing due to back pain (Tr. 81). Plaintiff watched television and played cards, but she had a short attention span (Tr. 81). Plaintiff experienced side effects from her medications, including nausea, vomiting, diarrhea, excessive sweating, and sleep issues (Tr. 82). Plaintiff used a spoon to eat and could not use a computer (Tr. 83). She experienced migraines three to four times per week for which she was prescribed Butalbital (Tr. 83).

On June 30, 2020, the ALJ held another hearing after receiving additional medical records and to obtain testimony from an orthopedic medical expert (Tr. 43). John Kwock, M.D., reviewed Plaintiff's file and provided testimony regarding her physical health (Tr. 44). Dr. Kwock identified the following medically determinable impairments: mild degenerative disc and degenerative joint disease in the lumbar spine; shoulder impingement syndrome in the right shoulder; chondromalacia patella of the right and left knee; and morbid obesity (Tr. 44-45). Dr. Kwock testified that Plaintiff's impairments singularly and in combination did not meet or equal a listing (Tr. 45). Dr. Kwock testified that Plaintiff could perform light exertional work, meaning that she could lift and carry up to 10 pounds frequently and 20 pounds occasionally; sit for six hours; and stand and walk for six hours out of an eight-hour workday (Tr. 45-46). He limited Plaintiff to occasional overhead reaching on the right; frequently pushing and pulling with the arms; and frequent pushing and pulling with the feet bilaterally (Tr. 46). He found she could frequently climb stairs and ramps; occasionally climb ladders and scaffolds, stoop, kneel, and crawl; and never crouch (Tr. 46). He limited her to occasional working in proximity to heavy or moving machinery

3

(Tr. 46).

On December 2, 2022, the ALJ held a third administrative hearing following the remand of this matter (Tr. 1665). Plaintiff could not fully sit on her chair due to a prolapsed uterus and lesions (Tr. 1673). At home, Plaintiff laid down in bed (Tr. 1673). Plaintiff had lesions under both breasts, arms, buttocks, and inner thighs (Tr. 1673). She took antibiotics for her lesions and prednisone (Tr. 1674). Plaintiff underwent surgery to excise the lesions, but they returned after the procedure (Tr. 1688).

Plaintiff received monthly steroid injections for her back and neck pain (Tr. 1673-674). Plaintiff could not bend over and could not stand for long because she had shooting pain in her back (Tr. 1675). Plaintiff had osteoarthritis in both knees and walked with a cane (Tr. 1676). She had carpal tunnel in both hands and wore a brace on her left hand (Tr. 1676). Plaintiff had trouble using her hands to text or use a fork, so she used "talk to text" on her phone and ate with a spoon (Tr. 1676). Plaintiff received injections in both shoulders; her right shoulder was worse than her left (Tr. 1677-678). Plaintiff had a hard time concentrating and remembering things and had difficulty interacting with others due to the conversations she was having in her head (Tr. 1679). Plaintiff had asthma and anemia (Tr. 1681).

Plaintiff's family assisted her with all aspects of personal care (Tr. 1682). Plaintiff had a grab bar and a bench in her shower and rails on the side of the toilet and down the steps (Tr. 1682-683).

### The ALJ's 2023 Decision

On December 5, 2023, the ALJ issued a partially favorable decision finding Plaintiff disabled as of June 1, 2023 (Tr. 1642-654). The ALJ determined that Plaintiff had not performed substantial gainful activity since her November 17, 2017 alleged disability onset date (Tr. 1644).

4

At step two, the ALJ found that Plaintiff had the severe impairments of degenerative disc disease, osteoarthritis, right shoulder tendinosis, hidradenitis suppurativa, hypertension, anemia, asthma, obesity, schizoaffective disorder, and PTSD (Tr. 1644). At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments (Tr. 1645-647). The ALJ concluded that prior to June 1, 2023, Plaintiff had the residual functional capacity ("RFC") to perform sedentary work, except she could not climb ladders, ropes, scaffolds, or crawl; could occasionally perform the other postural maneuvers; could not reach overhead; could occasionally type or keyboard; could perform other manipulative functions frequently; could frequently handle and finger; must avoid concentrated exposure to dust, fumes, and similar irritants; must avoid dangerous machinery and unprotected heights; could understand, remember, and carry out simple instructions; could have occasional interaction with coworkers, supervisors, and the general public; and could deal with changes to essential job functions on an occasional basis (Tr. 1647). For the period beginning June 1, 2023, the ALJ assessed Plaintiff with the same residual functional capacity, except he found that she could only occasionally perform manipulative (other than reaching) functions (Tr. 1651).

At step four, the ALJ determined that since her alleged disability onset date, Plaintiff was unable to perform her past relevant work as an EMT (Tr. 1652). At step five, the ALJ relied on the vocational expert's answers to Interrogatories to find that jobs existed in significant numbers in the national economy that Plaintiff could perform prior to June 1, 2023 (Tr. 1653). The ALJ concluded that, beginning on June 1, 2023, there were no jobs that existed in significant numbers in the national economy that Plaintiff could perform (Tr. 1654). Thus, the ALJ found that Plaintiff was disabled beginning on June 1, 2023 (Tr. 1654).

Plaintiff now complains about the ALJ's finding that she was not disabled prior to June

2023. The ALJ determined that Plaintiff did not prove disability prior to that date. The record evidence showed Plaintiff underwent conservative treatment, including physical therapy, medical branch blocks, and trigger point injections, for her cervical and lumbar degenerative disc disease. She reported more than 80% relief following the injections (Tr. 1345). Plaintiff's primary care provider recommended gentle walking, stretching, and Tylenol for her low back pain (Tr. 510, 514). At a consultative examination in 2019, Plaintiff had full range of motion of her cervical spine and could get on and off the exam table without difficulty. Plaintiff's sensation was intact, and she walked with a normal gait. Plaintiff reported that the medication was helping her symptoms. The medical expert who testified at the second administrative hearing characterized Plaintiff's degenerative disc disease as mild.

Plaintiff was also treated for asthma exacerbations, hypertension, a torn right rotator cuff, obesity, and skin lesions. Plaintiff's asthma was labeled "uncomplicated", and she was prescribed an inhaler (Tr. 507, 514). Plaintiff received trigger point injections for her shoulder pain and reported 80% relief (Tr. 1965). In 2022, Plaintiff had no ecchymosis, atrophy, or swelling in her right shoulder; she had full range of motion without stiffness or pain; impingement testing was negative; and her muscle strength was full (Tr. 1970). Plaintiff had a skin lesion removed in 2020, but her wound healed and improved with antibiotics (Tr. 2384). The ALJ concluded Plaintiff retained the residual functional capacity for a reduced range of sedentary work and jobs existed in the national economy that she could perform.

However, in June 2023, Plaintiff underwent an additional consultative examination that documented deterioration in her physical condition (Tr. 2582). During this examination, Plaintiff ambulated with difficulty, needed help dressing, and was observed to be uncomfortable while seated (Tr. 2582). Based on this evidence, the ALJ found Plaintiff disabled as of this date due to

a reduced residual functional capacity that precluded all employment.

## II.    <u>STANDARD OF REVIEW</u>

This Court reviews the final decision of the Commissioner only to assess whether the decision rests on application of proper legal standards and is supported by "substantial evidence." 42 U.S.C. § 405(g); *Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005).

In applying the deferential substantial evidence standard of review, the court does not "weigh the evidence or substitute its conclusions for those of the fact-finder." *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992); *Rutherford*, 399 F.3d at 552. Even if the court had decided the case differently, it defers to the Commissioner and affirms his findings and decision so long as substantial evidence supports them. *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999) (quotations omitted).

The Supreme Court has reiterated that the standard for substantial evidentiary sufficiency "is not high." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). It is only "more than a mere scintilla." *Id.* (internal quotation omitted). "It means – and means only – such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (internal quotation omitted; emphasis supplied). The substantial evidence standard, therefore, is even less demanding than the clearly-erroneous standard applicable to appellate review of district court fact-finding, *see Dickinson v. Zurko*, 527 U.S. 150, 153 (1999) (cited in *Biestek*, 139 S.Ct. at 1154) – stated differently, a very deferential standard.

As the Supreme Court in *Biestek* reminded, an ALJ's fact-finding is not readily subjected to categorical rules separate and apart from the deferential substantial evidence test. *Id.* at 1156-57. Instead, "[t]he inquiry, as is usually true in determining the substantiality of evidence, is case by-case." *Id.* (citing *Richardson v. Perales*, 402 U.S. 389, 410 (1971)).

### III.    DISCUSSION

#### A. The ALJ Correctly Determined Plaintiff's Date of Disability Onset

Plaintiff contends that the ALJ identifies no "legitimate medical basis" for the disability onset date set out in his decision (Tr. 1642-54). *See* Social Security Ruling ("SSR") 83-20, 1983 WL 31249 *3. Plaintiff further contends that the ALJ chose this date because it was the date of a consultative examination (Tr. 1652), and that the ALJ's finding that Ms. Lee's impairments became disabling only as of June 1, 2023, is not based on any legitimate medical evidence and cannot be affirmed. Plaintiff's Opposition Brief ("Pl.'s Br."), ECF No. 11 at p. 9. Plaintiff argues that the ALJ had no basis for finding her disabled as of June 1, 2023, and was required to call on the services of a medical advisor to determine when disability began (Pl.'s Br. at 6). Plaintiff's reliance on rescinded SSR 83-20, however, is misplaced.

The ALJ determined that Plaintiff's disability began on June 1, 2023, in accordance with SSR 18-01p, which rescinded and replaced SSR 83-20, effective October 2, 2018. https://www.ssa.gov/OP_Home/rulings/di/01/SSR2018-01-di-01.html (last visited November 1, 2025). As stated in SSR 18-01p:

> This SSR is applicable on October 2, 2018. We will use this SSR beginning on its applicable date. We will apply this SSR to new applications filed on or after the applicable date of the SSR and to claims that are pending on and after the applicable date. This means that we will use this SSR on and after its applicable date, in any case in which we make a determination or decision. We expect that Federal courts will review our final decisions using the rules that were in effect at the time we issued the decisions. If a court reverses our final decision and remands a case for further administrative proceedings after the applicable date of this SSR, we will apply this SSR to the entire period at issue in appropriate cases when we make a decision after the court's remand.

Based on SSR 18-01p's guidelines for assessing the onset date of disability, the ALJ was not required to seek assistance from a medical expert.

Plaintiff further contends that the ALJ's statement that the June 1, 2023 consultative

examination was the first to result in an opinion as to significant manipulative limitations is contrary to the evidence of record (Tr. 1652). On May 22, 2018, Kumar Ramdas, M.D., a treating physician, opined that Ms. Lee had significant limitations on her ability to reach, handle, or finger due to a rotator cuff tear (Tr. 630). She could not extend her arm fully due to this impairment (Tr. 630). Dr. Ramdas suggested limitations on Ms. Lee's ability to perform manipulative activities with her dominant right hand prior to the June 1, 2023 consultative examination (Tr. 630).

Defendant counters that the ALJ explained that on June 1, 2023, Plaintiff underwent an additional consultative  examination that showed that she walked with marked difficulty; had trouble getting on and off the exam table; and required assistance with dressing (Tr. 1652, 2585). The consultative examiner, Ronald Bagner, M.D., observed that Plaintiff was uncomfortable in a seated position and there was minimal movement in the cervical region (Tr. 1652, 2582). The range of motion in Plaintiff's shoulders was limited by pain, and Plaintiff would not allow passive range of motion testing (Tr. 2583). However, Plaintiff could make a fist and oppose the thumbs, and her grip strength was full (Tr. 2583). Dr. Bagner noted minimal movement in Plaintiff's lower back secondary to pain, but straight leg raise testing was negative (Tr. 2583). In his residual functional capacity assessment, Dr. Bagner limited Plaintiff to occasional handling, fingering, and feeling (Tr. 2589).

The Court further observes that the ALJ did not select June 1, 2023, as a calendar convenience but expressly tied that date to objective findings documented on that day by consultative examiner Ronald Bagner, M.D. Dr. Bagner reported that claimant ambulated with marked difficulty, required assistance with dressing, appeared uncomfortable while seated, demonstrated substantially compromised shoulder range of motion and would not permit passive range-of-motion testing, and he limited claimant to occasional handling, fingering, and feeling.

(Tr. 2582–89).

The ALJ relied on those specific observations in formulating the post-June 1 residual functional capacity and explained that Dr. Bagner's opinion was persuasive and consistent with his findings. (Tr. 1652–53). Although earlier treatment records reflect shoulder pathology (*see, e.g.*, Dr. Ramdas' May 22, 2018 notation of rotator-cuff-related limitation, Tr. 630; *see also* Initial ALJ Hearing Decision, dated 06/24/2020), Tr. 18-22), those clinical findings were not accompanied by any contemporaneous functional assessment indicating work-preclusive limitation, and the administrative record contains no documented medical assessment concluding that claimant's manipulative limitations were work-preclusive prior to Dr. Bagner's examination. As diagnostic observations, Dr. Ramdas' notes identify an anatomical impairment but do not constitute an opinion on the claimant's ability to perform work-related activities within the meaning of 20 C.F.R. § 404.1513(a)(2).

In that posture, SSR 18-01p permits an ALJ to rely on the first medical opinion that articulates the functional decline without requiring the use of a medical expert (*Kushner*, 765 F. App'x 825, 830); this approach remains consistent with the Third Circuit's recognition that the onset of disability must rest on a legitimate medical basis (*Walton v. Halter*, 243 F.3d 703, 709 (3d Cir. 2001); *Newell v. Comm'r of Soc. Sec.*, 347 F.3d 541, 548 (3d Cir. 2003)) and that the Court's review is confined to whether substantial evidence supports the ALJ's path (*Biestek*, 139 S. Ct. 1148, 1154). Accordingly, the ALJ's linkage of the onset date to Dr. Bagner's June 1 findings constitutes a permissible, reasoned determination under the governing standard of review.

Plaintiff also contends that the ALJ could have ordered a consultative examination at any point during the administrative proceedings and reliance upon the date a consultative examination was finally ordered and completed, rather than on any legitimate medical basis, penalizes Ms. Lee

for SSA's own delay. Plaintiff asserts that remand is required to determine the actual date Ms. Lee's impairments became disabling and not just the date on which a physician finally examined her; for development of the record and for further consideration of when Ms. Lee's progressive impairments became disabling if not for an award of benefits for the entire period at issue.

Plaintiff cites to evidence she contends supports a finding that she was limited to occasional manipulative functions prior to June 1, 2023 (Pl.'s Br. at 7). Plaintiff's identification of evidence that she believes supports a different result, however, does not undermine an ALJ's finding if supported by substantial evidence. *See Chandler*, 667 F.3d 356, 359 ("[C]ourts are not permitted to re-weigh the evidence or impose their own factual determinations."); *Hartranft*, 181 F.3d 358, 360 ("We will not set the Commissioner's decision aside if it is supported by substantial evidence, even if we would have decided the factual inquiry differently.").

Plaintiff further posits that the ALJ erred by not calling a medical expert to determine the disability onset date. As previously stated herein, SSR 83-20 was rescinded and replaced with SSR 18-01p in October 2018, prior to the ALJ's decision. *See* SSR 18-01p, 2018 WL 4945639, at *6. The Third Circuit has recognized, "SSR 18-01p gives ALJs complete discretion over the calling of medical experts." *Kushner*, 765 F. App'x 825, 829 n.3 (citing SSR 18-01p, 2018 WL 4945639, at *6 ("The decision to call on the services of a [medical expert] is always at the ALJ's discretion.")).

In sum, the ALJ found the June 1, 2023 opinion of the consultative examiner persuasive and incorporated the limitations assessed into the residual functional capacity as of that date. Accordingly, substantial evidence supports the ALJ's determination.

### B. The Conflict Between the Vocational Expert's Testimony and the DOT

Plaintiff argues that substantial evidence does not support the ALJ's step five finding for failure to resolve a conflict between the vocational expert's testimony and the DOT with respect to Plaintiff's ability to reach (Pl.'s Br. at 16). Specifically, Plaintiff argues that the vocational expert's testimony that an individual with Plaintiff's residual functional capacity, which limited her to no overhead reaching, was not consistent with the information in the DOT. Plaintiff contends that all three occupations identified by the vocational expert require frequent reaching, which conflicts with Plaintiff's limitation to no overhead reaching (*Id.*). SSR 00-4p, 2000 WL 1898704, explicitly provides that before an Agency adjudicator can rely on testimony from a vocational expert to support a finding of non-disability, the adjudicator must identify, address, and explain the resolution of any apparent conflicts between the testimony of the vocational expert and the contents of the DOT. SSR 00-4p, 2000 WL 1898704 *1-4.[3] If an apparent conflict exists, the adjudicator must obtain a reasonable explanation from the vocational expert as to why their testimony appears to conflict with the contents of the DOT. *Id.* at 4.[4] After doing so, the adjudicator

---

[3] "As a general rule, occupational evidence provided by a [VE] should be consistent with the occupational evidence presented in the DOT." *Zirnsak v. Colvin*, 777 F.3d 607, 617 (3d Cir. 2014) (citing SSR 00-4p, 2000 SSR LEXIS 8, 2000 WL 1898704, at *2 (Dec. 4, 2000)). A VE may, however, rely on his or her own experience in addition to the DOT when determining whether an individual is capable of performing a given job. *Horodenski v. Comm'r of Soc. Sec.*, 215 F. App'x 183, 189-90 (3d Cir. 2007) (finding the ALJ did not err in relying on a vocational expert who based his opinion on thirty years of his experience); *Butler v. Colvin*, No. 13-7488, 2015 U.S. Dist. LEXIS 16496, 2015 WL 570167, at *9 (D.N.J. Feb. 11, 2015) (noting that Judges in the Third Circuit "have encouraged" vocational experts "to rely on their experiences rather than solely on the DOT").

[4] "To ensure consistency, courts have imposed an obligation on ALJs to [i]dentify and obtain a reasonable explanation for any conflicts between occupational evidence provided by [vocational experts] . . . and information in the [DOT].'" *Zirnsak*, 777 F.3d at 617 (citations omitted). "Specifically, an ALJ is required to (1) ask, on the record, whether the [VE's] testimony is consistent with the DOT, (2) 'elicit a reasonable explanation where an inconsistency does appear, and (3) explain in its decision 'how the conflict was resolved.'" *Id.* (citations omitted). "An ALJ's failure to comply with these requirements may warrant remand in a particular case[,]" but "the presence of inconsistencies does not mandate remand, so long as 'substantial evidence exists in other portions of the record that can form an appropriate basis to support the result.'" *Zirnsak*, 777 F.3d at 617; *Rutherford*, 399 F.3d at 558 (finding that vocational expert testimony provided substantial evidence for the ALJ's step 5 finding, despite minor inconsistencies between the testimony and DOT).

must resolve the apparent conflict and explain their basis for doing so. *Id.*[5]

Here, the ALJ submitted Interrogatories to a vocational expert, asking whether jobs existed for a hypothetical individual with Plaintiff's vocational background who was limited to sedentary work, except she could not climb ladders, ropes, or scaffolds; could not crawl; could perform other postural functions occasionally; could not reach overhead; could occasionally type or keyboard; could perform other manipulative functions frequently; could frequently handle and finger; must avoid concentrated exposure to dust, fumes, and similar occupational irritants; must avoid dangerous machinery and unprotected heights; could understand, remember, and carry out simple instructions; could have occasional interaction with coworkers, supervisors, and the public; and could deal with changes to essential job functions on an occasional basis (Tr. 1845). The vocational expert responded that jobs existed for such an individual and identified the jobs of scaler operator (DOT # 737.687-126); final assembler (DOT # 713.687-018); and carding machine operator (DOT # 681.685-030) (Tr. 1845).

Plaintiff further contends that there was an apparent conflict in that the RFC and hypothetical question to the vocational expert precluded any overhead reaching, and yet the DOT indicates that all the occupations adopted by the ALJ require frequent reaching. DOT §§ 681.685-030, 713.687-018, 737.687-126. ECF No. 11, p. 16.[6] Plaintiff further argues, the ALJ did not

---

[5] "An ALJ's failure to comply with these requirements may warrant remand in a particular case[,]" but "the presence of inconsistencies does not mandate remand, so long as 'substantial evidence exists in other portions of the record that can form an appropriate basis to support the result.'" *Zirnsak*, 777 F.3d at 617; *Rutherford*, 399 F.3d at 558 (finding that vocational expert testimony provided substantial evidence for the ALJ's step 5 finding, despite minor inconsistencies between the testimony and DOT).

[6] Plaintiff cites, the Court of Appeals for the Fourth Circuit went even further and held that a vocational expert's testimony that a limitation to occasional overhead reaching with solely the non-dominant arm would present a significant conflict under SSR 00-4p with respect to a DOT job description requiring frequent reaching. *Pearson v. Colvin*, 810 F.3d 204, 208-11 (4th Cir. 2015); and the Court of Appeals for the Second Circuit has held that there is an apparent conflict under SSR 00-4p when a vocational expert testifies that a claimant who must avoid all overhead reaching remains capable of performing jobs which the DOT indicates require frequent or occasional reaching. *Lockwood v. Comm'r of Soc. Sec.*, 914 F.3d 87, 90-94 (2d Cir. 2019).

acknowledge and resolve the conflict in the vocational evidence as to whether Ms. Lee could perform the occupations adopted with the reaching limitations adopted (Tr. 1653); the ALJ erroneously found that the vocational expert's testimony was consistent with the DOT (Tr. 1653); and remand for resolution of this conflict in the vocational evidence is required pursuant to SSR 00-4p.

With respect to the asserted DOT conflict, the administrative record indeed contains the vocational expert's contemporaneous explanation and the ALJ's solicitation of that explanation (Tr. 1845). In response to the ALJ's interrogatory, the vocational expert stated that, based on his experience, the jobs he identified did not require overhead reaching and therefore posed no inconsistency with the RFC's no-overhead-reaching limitation; in his words, "[t]here is no overhead reaching required." (*Id.*). The ALJ put that explanation on the record, expressly found the VE's testimony consistent with the DOT, and relied on the VE's answers in concluding that jobs existed in significant numbers prior to June 1, 2023. (Tr. 1653–54). SSR 00-4p requires an ALJ to elicit a reasonable explanation for any apparent conflict between a VE's testimony and the DOT and to explain the resolution on the record (*see* SSR 00-4p, 2000 WL 1898704), and the Social Security Administration's Vocational Expert Handbook likewise directs ALJs to obtain and document such explanations. *See* Vocational Expert Handbook, Social Security Administration (Mar. 2023); *see also Biestek*, 139 S. Ct. 1148, 1155 n.2 (recognizing the VE Handbook as an accurate statement of SSA policy).

The VE elucidated:

> There are no conflicts from my more than 40 years of operating a vocational rehabilitation facility [and] with disabled clients placing them in competitive employment at these jobs. There is no overhead reaching required, there is no public contact, and only occasional interaction with supervisors and coworkers is needed

(Tr. 1653). Based on these responses, the ALJ concluded that the vocational expert's testimony

was consistent with the information in the DOT and concluded that, prior to the onset of disability, jobs existed that Plaintiff could have performed (Tr. 1653-654).

Because the VE's reasonable explanation and the ALJ's express acceptance of it appear in the administrative record, the Court concludes the ALJ fulfilled his SSR 00-4p obligations here. (Tr. 1845). To be sure, several circuits have held that limitations precluding overhead reaching can create apparent conflicts with DOT job descriptions that list "frequent" reaching (*see Pearson*, 810 F.3d 204; *Moore*, 769 F.3d 987; *Lockwood*, 914 F.3d 87), but those cases are distinguishable where, as here, the VE provided an on-the-record, experience-based explanation that the particular jobs at issue do not require overhead reaching and the ALJ expressly credited that explanation (*cf. Zirnsak*, 777 F.3d 607, 616–17). This conclusion is reinforced by recent decisions within this District that applied *Zirnsak* in materially similar circumstances. In *Michael D. v. Commissioner of Social Security*, the District of New Jersey explained that where an ALJ asks, on the record, whether a VE's testimony is consistent with the DOT and the VE provides a contemporaneous, experience-based explanation that the identified jobs do not require the challenged activity (here, overhead reaching), the ALJ satisfied his obligations under SSR 00-4p and may rely on the VE's testimony. *Michael D.*, Civ. No. 23-1090 (D.N.J. Oct. 13, 2023).

Thus, the ALJ specifically asked about any conflicts between the vocational expert's testimony and the DOT (Tr. 1653). The ALJ then obtained a reasonable explanation from the vocational expert regarding the apparent conflict (*Id.*). The vocational expert explained that the jobs he identified did not require overhead reaching and, therefore, no such conflict existed. Accordingly, substantial evidence supports the ALJ's step five finding and is consistent with *Zirnsak* and its progeny. The Court thus finds no reversible error on this point.

### C. Substantial Evidence Supports the ALJ's Finding that Plaintiff Could Perform Sedentary Work Prior to June 1, 2023

Plaintiff next argues that she could not perform sedentary work, which involves working in a seated position, due to the lesions from her hidradenitis suppurativa (Pl.'s Br. at 16). The ALJ found that Ms. Lee was not disabled prior to June 1, 2023, because she could perform a significant number of sedentary jobs in the national economy (Tr. 1653). Plaintiff contends that the ALJ failed to consider the impact of lesions caused by Ms. Lee's admittedly severe hidradenitis suppurtiva (Tr. 1644) in finding that she could perform sedentary work. A review of the ALJ's decision reveals he properly assessed Plaintiff's physical residual functional capacity, including her ability to sit.

The residual functional capacity is a finding as to the most a claimant can still do in a work setting despite her functional limitations, 20 C.F.R. § 404.1545(a)(1). Its assessment is within the ALJ's exclusive jurisdiction. 20 C.F.R. § 404.1546(c); *accord Chandler,* 667 F.3d 356, 361 ("The ALJ—not treating or examining physicians or State agency consultants—must make the ultimate disability and RFC [residual functional capacity] determinations."). In the residual functional capacity, the ALJ must include a claimant's credibly established limitations only, not all limitations a claimant alleges. *See* 20 C.F.R. § 404.1529 (discussing the factors relevant to assessing alleged limiting effects of impairments).

The evidence potentially relevant to the RFC finding includes "objective medical evidence," "medical opinions," "other medical evidence" (*i.e.,* "medical history, clinical findings, diagnosis, treatment prescribed with response, or prognosis"), "evidence from non-medical sources," and "prior administrative medical findings." 20 C.F.R. § 404.1513(a)(1)-(5).

"Medical opinions" in this context are statements from medical sources specifically with respect to a claimant's abilities or limitations in terms of physical, mental, and other work activities. *See* 20 C.F.R § 404.1513(a). The ALJ cannot "defer or give any specific evidentiary

weight" to a medical opinion or a prior administrative medical finding; rather, the ALJ assesses the persuasiveness of medical opinions at "source level," with "supportability" (how well the medical source supported the opinions with objective medical evidence and explanation) and "consistency" (how consistent the opinions are with other evidence) being the most important factors. *See* 20 C.F.R. § 404.1520c(a).[7]

Within this framework, an agency's decision need not be "elaborate or even sophisticated." *T-Mobile South, LLC v. City of Roswell*, 574 U.S. 293, 302 (2015). Only a "reasonable articulation standard" applies to agency administrative decisions. 82 Fed. Reg. 5844, 5858. The court "will not upset the decision" so long as the "'agency's path may reasonably be discerned.'" *Alaska Dept. of Envt'l Conservation v. E.P.A.*, 540 U.S. 461, 497 (2004) (quotation omitted); *accord Garland v. Ming Dai*, 141 S. Ct. 1669, 1679 (2021) ("a reviewing court must uphold even a decision of less than ideal clarity if the agency's path may reasonably be discerned") (quotations omitted). The decision need only be detailed enough to permit a reviewing court "to trace the path of [the] adjudicator's reasoning." 82 Fed. Reg. at 5,858; *see* Revisions to Rules Regarding the Evaluation of Medical Evidence, 81 Fed. Reg. 62,560, 62,575 (Sept. 9, 2016).

Here, the ALJ acknowledged Plaintiff's administrative hearing testimony regarding her difficulty sitting and lesions that did not go away (Tr. 1648). The ALJ further acknowledged that during the October 2019 consultative examination, the examiner was unable to perform a thorough examination due to skin lesions and difficulty raising her arms (Tr. 1649, 1049-050). The ALJ further noted that, in May 2020, Plaintiff submitted photographs of the lesions in the axillae and inguinal areas (Tr. 1649).

---

[7] The revised regulation, effective March 27, 2017, eliminated the former "treating physician rule" and requires that all medical opinions be evaluated for supportability and consistency rather than assigned controlling weight. *See* Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844 (Jan. 18, 2017).

In reaching the residual functional capacity assessment, the ALJ also addressed the October 2019 opinion of the consultative examiner, Ruth Robles, M.D. (Tr. 1650, 1047-050). At this exam, Plaintiff alleged that she could not work due to asthma, hypertension, and anemia (Tr. 1047). Plaintiff did not mention her skin condition (Tr. 1047). Plaintiff reported she could go to the store or office by herself; do light cleaning; feed herself; make simple meals by herself; brush her teeth; and climb up and down a few steps (Tr. 1048-049). On examination, Plaintiff appeared in no acute distress; she was able to get on and off the exam table; she was able to dress herself; and she was "comfortable in a seated position during the interview" (Tr. 1049). Plaintiff reported scars on the axillary area and described actively draining hidradenitis suppurative [lesions] on the intergluteal area (Tr. 1049). Examination of Plaintiff's head, ears, eyes, nose and throat (HEENT), neck, cardiac and pulmonary systems was unremarkable (Tr. 1049). Plaintiff's abdomen was soft and non-tender, non-distended, and had normal, active bowel sounds (Tr. 1050). There were no organomegaly, masses, or ascites (Tr. 1050). Plaintiff wore a right wrist brace, but there was no observed loss of the thenar and hypothenar eminence (Tr. 1050). Plaintiff declined to move both upper extremities and held them close to her chest throughout the examination (Tr. 1050). Plaintiff's hands were grossly normal, and she had complete function of opposing fingers (Tr. 1050). Plaintiff had full range of motion in her hips, knees, and ankles bilaterally; full motor strength in her lower extremities; her deep tendon reflexes were 2+; and her sensation was intact (Tr. 1050). Plaintiff had full range of motion in her cervical spine and there was no evidence of tenderness or spasm (Tr. 1050). Plaintiff declined to perform range of motion of the lumbar spine (Tr. 1050). Plaintiff was able to walk with a normal physiologic gait; she did not require an aide, but she declined to walk on her heels, toes, or squat (Tr. 1050). Plaintiff's speech and mental examination were normal (Tr. 1050).

Dr. Robles concluded that the examination of Plaintiff's upper extremities was suboptimal because she refused to move her arms (Tr. 1051). She recommended examination by a physiatrist (Tr. 1051). *Dr. Robles concluded that Plaintiff would be able to sit for a reasonable amount of time with needed breaks and she had no significant balance limitations* (Tr. 1051) (emphasis added). Dr. Robles then completed a residual functional capacity questionnaire in which she opined that Plaintiff could sit for eight hours at one time without interruption and sit for a total of four hours in an eight-hour workday (Tr. 1056).

The ALJ found that Dr. Robles' opinion that Plaintiff could sit for a reasonable amount of time with needed breaks was partially persuasive "to the extent that it is consistent with a residual functional capacity for a limited range of sedentary work" (Tr. 1650). The ALJ did not find the opinion fully persuasive, noting that Dr. Robles was only able to perform a limited examination of Plaintiff (Tr. 1650). The ALJ was not required to adopt all the limitations assessed by Dr. Robles, and he adequately explained that the opinion was only partially persuasive because Dr. Robles was unable to perform a full examination of Plaintiff (Tr. 1650). In reaching that conclusion, the ALJ evaluated each medical opinion under the supportability and consistency factors required by 20 C.F.R. § 404.1520c, explaining that the pre–June 1 opinions of Drs. Robles and Ramdas were only partially persuasive insofar as their narrative findings were inconsistent with largely normal clinical observations (*Id.*).

Plaintiff cites to the fact that in May 2020, she had a lesion removed from her inner thigh (Pl.'s Br. at 17, citing to Tr. 2384, 2388-889) to support her argument that she cannot sit for six hours each day. Plaintiff further contends that the ALJ did not explain why he was rejecting Dr. Robles' opinion that Ms. Lee would require breaks from sitting, as needed (Tr. 1650). The medical evidence shows that by the following month, however, the wound was well healed with erythema

19

and crust resolved (Tr. 2384). Plaintiff's cellulitis was labeled "resolved" (Tr. 2385). Further, in October 2017, Plaintiff's hidradenitis was in remission and she had no active disease in her integumentary system (Tr. 825). After her surgery in December 2022, Plaintiff's skin was described as normal with good turgor, no rashes, and no suspicious lesions (Tr. 2458). Although Plaintiff complained of rashes under her armpits, she was prescribed Doxycycline and Mupirocin ointment and was otherwise described as in no acute distress (Tr. 2458).

Plaintiff asserts that because the ALJ did not either adopt or reject a potentially work-preclusive limitation, *i.e.*, Dr. Robles' opinion that Ms. Lee would be required to take breaks as needed when sitting (Tr. 1647, 1650, 1653), and because he ignored evidence of limited ability to sit prior to June 1, 2023, remand for further proceedings is required. Based on the foregoing, the Court disagrees.

In sum, there is no medical evidence supporting a greater limitation on Plaintiff's ability to sit prior to June 1, 2023. Substantial evidence supports the ALJ's residual functional capacity for a reduced range of sedentary work. Even if the record could support contrary inferences, the ALJ's path can be reasonably discerned, and his residual functional capacity determination rests on "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek*, 139 S. Ct. 1148, 1154; *Chandler*, 667 F.3d 356, 359.

### D.    The ALJ Properly Allowed for the Testimony of the Medical Expert.

Plaintiff next challenges the ALJ's consideration of the medical expert's opinion. Plaintiff contends that the ALJ erred by relying on Dr. Kwock's opinion because it was inherently flawed. Plaintiff argues that a medical expert may not testify at the beginning of an administrative hearing without the benefit of listening to the claimant's testimony or hearing a summary of it (Pl.'s Br. at 21). Plaintiff bases her argument on the fact that the ALJ did not follow the agency's Hearings, Appeals, and Litigation Law Manual (HALLEX), specifically HALLEX I-2-6-70(b) (*Id.*).

The Court rejects Plaintiff's argument because the HALLEX is not legally binding and does not create judicially enforceable rights. *Barlow-Ahsan v. Kijakazi*, No. 21-CV-02220-RAL, 2023 WL 6847559, at 5 (E.D. Pa. Oct. 17, 2023) (citing *Bordes v. Comm'r of Soc. Sec.*, 235 F. App'x 853, 859 (3d Cir. 2007) (quoting *Schweiker v. Hansen*, 450 U.S. 785, 789 (1981)). The Third Circuit has held that "HALLEX provisions" "lack the force of law," and that they "create no judicially-enforceable rights." *See Bordes*, 235 F. App'x at 859; *see also Schweiker*, 450 U.S. at 789 ("[T]he Claims Manual is not a regulation. It has no legal force, and it does not bind the SSA. Rather, it is a 13-volume handbook for internal use by thousands of SSA employees."); *Sutton v. Colvin*, No. CV 16-1884, 2016 WL 9456336, at *7, n. 22 (E.D. Pa. Dec. 22, 2016), R&R adopted 2017 WL 3508734 (E.D. Pa. Aug. 15, 2017) "Since the [HALLEX] manual is not binding, allegations of noncompliance should not be reviewed." *Raja v. Comm'r of Soc. Sec.*, No. 2:11-CV-01755, 2012 WL 2871185, at *3 (D.N.J. July 12, 2012). *See also Bowie v. Comm'r of Soc. Sec.*, 539 F.3d 395, 399 (6th Cir. 2008) (providing that HALLEX is not binding on the court).

Plaintiff contends that, pursuant to the HALLEX, a medical expert must have either heard the claimant's testimony or heard the ALJ's summary of the claimant's testimony before giving his or her own testimony. HALLEX I-2-6-70, however, does not require a medical expert to be present for a claimant's testimony. *See* HALLEX I-2-6-70B, 1993 WL 751901 (stating that a medical expert is not required to attend the entire hearing). Although the HALLEX allows the ALJ to summarize pertinent testimony for the medical expert, a summary is unnecessary when the medical expert is already aware of the pertinent information he or she needs to form his or her opinion. *See Westbrook v. Colvin*, No. 3:14-CV-1857, 2015 WL 4979022, at *6 (N.D. Tex. Aug. 19, 2015) (finding no need for summary where the medical expert was aware of the pertinent medical information).

Here, the medical expert, Dr. Kwock, testified at the second administrative hearing in June 2020 (Tr. 41). Dr. Kwock testified that he had the opportunity to review the file in the case, which included Plaintiff's testimony from the first administrative hearing in September 2019 (Tr. 44). Dr. Kwock further testified that he was able to provide an opinion as to Plaintiff's medically determinable impairments, whether those impairments met or equaled a listing, and what type of functional limitations or abilities Plaintiff had (Tr. 44-45). Because Dr. Kwock had reviewed Plaintiff's medical records prior to testifying, he did not require Plaintiff's testimony to come to a conclusion on whether she met a listing and her ability to function in the workplace. Further, a transcript of Plaintiff's testimony from the first administrative hearing was in the record that Dr. Kwock reviewed (Tr. 63-84).

Accordingly, the ALJ did not err in taking Dr. Kwock's testimony without summarizing Plaintiff's first administrative hearing testimony.[8]

Finally, Plaintiff suggests that Dr. Kwock's opinion was incomplete because he did not hear her most recent testimony regarding her lesions (Pl.'s Br. at 28). The ALJ may consider and find an opinion persuasive, even though some time has passed, resulting in new medical evidence that was not viewed by the medical expert. Indeed, the Third Circuit has recognized that an ALJ may rely on State agency opinions even though "there is always some time lapse between the consultant's report and the ALJ hearing and decision." *Chandler, 667 F.3d 356, 361.*

Because HALLEX is not legally binding and Plaintiff failed to object to the order allowing the medical expert's testimony at the time of the administrative hearing, the Court finds that the ALJ properly allowed the medical expert's testimony. Having addressed each of Plaintiff's

---

[8] Plaintiff further argues a violation of HALLEX I-2-6-70(B) for the first time in opposition. Plaintiff's counsel did not object to the order of the testimony at the hearing.

assignments of error, the Court finds no basis for disturbing the Commissioner's final decision.

## IV.    <u>CONCLUSION</u>

Based on the foregoing, the Commissioner's decision is supported by substantial evidence and comports with the law and is **AFFIRMED.** An appropriate Order accompanies this Opinion.

**DATED**: November 4, 2025

JULIEN XAVIER NEALS
United States District Judge